IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

VALIANT GREEN,

                Plaintiff,

    v.

DAVID G. BETH, BRAD HEILET,
DAVE LIANEU, JANE AND/OR JOHN
DOE NURSING STAFF and
JOHN DOE FOOD VENDOR/DISTRIBUTOR,

                Defendants.

OPINION and ORDER

15-cv-540-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se prisoner Valiant Green has filed an amended complaint in response to this court's November 12, 2015 order dismissing his original complaint for failing to provide fair notice of his claims, as required by Fed. R. Civ. P. 8. The scope of plaintiff's amended complaint is similar to his original complaint, in which he alleged that he damaged several teeth after biting down on a rock in food served at the Kenosha County Detention Center. In addition, he alleged that he did not receive prompt medical care for his injury. He brings his claims under both the United States Constitution and Wisconsin's common law for negligence.

      In the November 12 order, I noted two types of problems with plaintiff's complaint. First, plaintiff did not include allegations explaining how each of the defendants violated his rights. Second, with respect to the unknown defendants, plaintiff neither provided enough

1

information to allow those defendants to be identified later in the case nor showed that he made reasonable efforts to uncover that information before filing his complaint. Because I conclude that plaintiff has not resolved either of those problems in his amended complaint, I am dismissing his claims under the Constitution for his failure to state a claim upon which relief may be granted. In accordance with 28 U.S.C. § 1367(c)(3), I am declining to retain jurisdiction over his state law claims. Plaintiff is free to refile those claims in state court if he wishes.

OPINION

A. Standard of Review

Plaintiff alleges in his amended complaint that he was a pretrial detainee at the time he was injured, which means that his claim is governed by the due process clause of the Fourteenth Amendment. Rice ex rel. Rice v. Correctional Medical Services, 675 F.3d 650, 664 (7th Cir. 2012). In the context of a claim like plaintiff's regarding his conditions of confinement, the Court of Appeals for the Seventh Circuit has applied a "deliberate indifference" standard to pretrial detainees, which is the same standard applied to convicted prisoners under the Eighth Amendment. Id. This means that plaintiff's due process claims have three elements:

- Was plaintiff subjected to a substantial risk of serious harm?
- Was each defendant aware of the risk?
- If a defendant was aware of the risk, did he or she consciously refuse to take

2

reasonable measures to prevent plaintiff from being harmed?

Smego v. Mitchell, 723 F.3d 752, 756 (7th Cir. 2013); Fisher v. Lovejoy, 414 F.3d 659, 662 (7th Cir. 2005); Lewis v. Richards, 107 F.3d 549, 553 (7th Cir. 1997); Langston v. Peters, 100 F.3d 1235, 1238 (7th Cir 1996).

B. Failure to Screen Food

Plaintiff's first claim is that defendants David Beth (the sheriff), Brad Heilet (a lieutenant) and Dave Lianeu (the kitchen manager) may be held liable for failing to screen his food properly. Plaintiff alleges that, on September 12, 2014, he damaged four of his teeth after biting into a rock that was in his food. Two teeth were chipped, one tooth was "split" and a gold tooth was "bent." In addition, he alleges that there were three other incidents before September 2014 in which inmates at the jail found foreign objects in their food. One incident occurred in "July or August 2014." Plaintiff says that he does not know what the object was, but it caused the prisoner's gums to bleed. Plaintiff does not identify when the second incident occurred except to say that it was "prior to Sept. 12, 2014," and, again, he does not know what the object was. However, he says that the object "caused [the inmate's] front tooth to be chipped in half." With respect to the third incident, plaintiff says that an inmate found a plastic fork in his food at some time before September 12, 2014. (Plaintiff also alleges generally that it was a "common occurrence" for inmates to find "foreign objects" in their food, but the only examples he identifies are those listed above and he identifies no reason to believe that additional incidents occurred .)

3

I will assume that plaintiff's allegations of harm are sufficiently serious to sustain a claim under the Constitution. However, I am dismissing this claim because the previous incidents alleged by plaintiff were not sufficient to provide jail officials *notice* of a substantial risk of serious harm, which is the standard for plaintiff's claim.

To begin with, plaintiff does not allege that the plastic fork harmed the inmate who found the fork in his food and he does not explain how a plastic fork would be likely to harm an inmate. It is unlikely that an inmate would hurt his teeth on a plastic fork or swallow it. Further, a plastic fork would not likely create a sanitary concern. Although I agree with plaintiff that an inmate's food should not include any foreign objects, the incident with the plastic fork does not provide notice of a substantial risk of serious harm. <u>Wishon v. Gammon</u>, 978 F.3d 446, 449 (8th Cir.1992)(no constitutional violation when prisoner did not allege that food was "prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food"); <u>Lunsford v. Reynolds</u>, 376 F.Supp. 526, 527 (W.D. Va.1974)("The only contention concerning food which is detailed at all, is the inmates' complaint that their food frequently contains insects. Nevertheless, occasional incidents of a foreign object contained in food, while regrettable, does not present a question of constitutional proportion").

This leaves the two incidents involving unknown objects. Even if I infer that the objects were dangerous because of the harm they caused, two previous incidents over an unknown span of time is not sufficient to give notice to officials of a substantial risk that plaintiff in particular or any another inmate would be seriously harmed in the near future.

4

The Court of Appeals for the Seventh Circuit has stated that a "substantial risk" in the context of a deliberate indifference claim is a "risk[] so great that [it is] almost certain to materialize if nothing is done." Brown v. Budz, 398 F.3d 904, 911 (7th Cir. 2005) (internal quotations omitted). Although even one inmate harmed by a foreign object in his food is too many, I cannot say that two incidents would suggest to jail officials that there is a serious problem rather than just an isolated occurrence. Robinson v. Beckles, No. CV 10-362-SLR, 2015 WL 4511693, at *12 (D. Del. July 24, 2015) ("[F]ood preparation [at a correctional facility] occurs within a short period for [many] inmates. As a result, . . . pieces of metal or foreign objects find their way into meals . . . by happenstance."). Certainly, the risk of serious harm would be no more obvious under plaintiff's allegations than it would be for a situation in which officials knowingly leave a wet and slippery floor without taking precautions to prevent harm to inmates. Pyles v. Fahim, 771 F.3d 403, 410-11 (7th Cir. 2014) ("[S]lippery surfaces and shower floors in prisons, without more, cannot constitute a hazardous condition of confinement [under the Constitution].")

My conclusion is consistent with cases across the country in which courts have rejected the view that a small number of incidents involving problems with food in a correctional facility is sufficient to state a claim under the Constitution. George v. King, 837 F.2d 705, 707 (5th Cir. 1988) (if isolated instances of problems with food violated Constitution, "the federal courts would of necessity become the forums for determining the propriety and desirability of virtually all details of prison food service management"); Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11th Cir. 1985)("The fact that the food

5

occasionally contains foreign objects . . . does not amount to a constitutional deprivation"); Smith–Bey v. CCA/CTF, 703 F. Supp. 2d 1, 8 (D.D.C. 2010) (holding "two instances of discovering cockroaches in one's food do not rise to the level of a sufficiently serious deprivation" for Eighth Amendment purposes); Avery v. Ferguson, No. CIV.08-5091, 2010 WL 3829433, at *11 (W.D. Ark. Sept. 3, 2010) ("[I]solated incidents [involving foreign objects in food] do not state a claim of constitutional dimension."); Tuggle v. Evans, 457 F. Supp. 1015 (D. Colo.1978) (dismissing plaintiff's claim that he found foreign and inedible matter in prison food on four separate occasions for failure to allege deprivation of constitutional right); Lovern v. Cox, 374 F. Supp. 32, 35 (W.D. Va.1974) ("Nor does an occasional incident of a foreign object discovered in prison food raise a question of constitutional proportions.").

At the least, these cases show that jail officials would be entitled to qualified immunity because there is no clearly established law that such a small number of earlier incidents would allow an inmate to hold an official liable under the Constitution. Carroll v. Carman, 135 S. Ct. 348, 350 (2014) ("A government official sued under § 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."). See also Miller v. Harbaugh, 698 F.3d 956, 963-64 (7th Cir. 2012) (not clearly established that using bunk beds in juvenile detention center violated Constitution, even though defendants were aware that small number of inmates used bunk beds to hang themselves). Because both 28 U.S.C. § 1915(e)(2)(B)(iii) and § 1915A(b)(2) require district courts to consider qualified

immunity at the screening stage, Gleash v. Yuswak, 308 F.3d 758, 760 (7th Cir. 2002), plaintiff cannot proceed on this claim.

Even if I assumed that the previous incidents alleged by plaintiff were sufficient to give notice of a substantial risk of serious harm, I would have to dismiss this claim in any event because plaintiff does not allege facts suggesting that any of the *defendants* were aware of these previous incidents. Although plaintiff includes a conclusory allegation that the named defendants were aware, he does not explain how any particular defendant learned about the incidents. Plaintiff does not allege that any inmate filed a grievance or asked an officer to prepare an incident report. Rather, plaintiff alleges that officers simply threw out the trays. Because "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim under federal pleading rules, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), plaintiffs' conclusory allegation that "defendants" knew about the previous incidents cannot save this claim. See also Grieveson v. Anderson, 538 F.3d 763, 778 (7th Cir. 2008) (plaintiffs may not rely on "[v]ague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct").

### C. Delay in Medical Care

Plaintiff identifies two problems with the medical care that he received after he bit on the rock. First, he says that unknown nursing staff refused to see him for several days. Second, he says that nursing staff refused to schedule a dentist appointment for him for

7

another month.

In the November 12 order, I concluded that plaintiff had failed to provide enough information about either claim. With respect to the alleged initial delay in seeing plaintiff, I noted two problems with the complaint. First, plaintiff did not explain why he believed that nursing staff was responsible for the delay. Second, plaintiff had failed to provide enough information to identify the culpable members of the nursing staff.

In his amended complaint, plaintiff attempts to address the first problem by alleging that unnamed jail staff told him on multiple occasions "that they had let the nursing staff know of his condition." However, plaintiff does not allege what these unnamed staff members told the nurses, which nurses were contacted or what those nurses said in response. Without any of that information, it is impossible to determine whether a particular nurse was aware of a substantial risk to plaintiff's health and consciously disregarded that risk.

Further, plaintiff still has not provided information that would aid in identifying a particular nurse who allegedly refused to see him, even though I instructed plaintiff to include that information in his amended complaint. Plaintiff alleges that he complained to security staff continuously over the six-day period he was waiting to be seen, but the only person he identifies is Zola Davis, the staff member who obtained an appointment with the nurses. Because Davis's efforts were successful, they do not provide any support for plaintiff's claim. Plaintiff provides no identifying information about any of the security staff who allegedly tried to help him but failed because the nurses refused to see him. With the exception of his first complaint, he does not identify the days or approximate times that he

8

made any of his complaints to staff. Further, he does not describe any efforts he made to learn that information.

As I explained to plaintiff in the November 12, order, "[a] plaintiff [suing 'John Doe' defendants] must not only allege that the defendant is unknown, but also provide, or attempt to provide, an adequate description or other known information so that service of process can at least be attempted. . . . The court will not permit use of the 'Doe' designation for a defendant if the plaintiff's ignorance of the defendant's true identity is the result of willful neglect or lack of reasonable inquiry." 2 Moore's Federal Practice § 10.02[2][d][i] (3d ed. 2015). See also Fed. R. Civ. P. 11(b) (before submitting document to court, party must conduct "an inquiry reasonable under the circumstances"). In this case, plaintiff has neither provided an adequate description of the defendants nor shown that he conducted a reasonable inquiry to obtain more information.

Even with discovery, it is not clear how plaintiff would be able to identify the unknown defendants. Because plaintiff has so little information about the staff members allegedly involved and he does not allege that he submitted any written health service requests to the nurses, he would have to conduct a deposition of every security and nursing staff member who worked at the detention center at the relevant time to determine whether they had an independent recollection of making or receiving a complaint regarding the incident in this case. Even then, it seems quite possible that staff would not remember the incident. Under these circumstances, I decline to allow plaintiff to proceed on this claim. Although federal pleading rules are liberal, they do not allow a plaintiff to go on a fishing

9

expedition without some basis for inferring that he may be able to prove his claim. In re Text Messaging Antitrust Litigation, 630 F.3d 622, 629 (7th Cir. 2010) ("The fact that the allegations undergirding a claim could be true is no longer enough to save a complaint from being dismissed; the complaint must establish a nonnegligible probability that the claim is valid."); In re marchFIRST Inc., 589 F.3d 901, 905 (7th Cir. 2009) (plaintiff "must plead some facts that suggest a right to relief that is beyond the speculative level").

Plaintiff's claim regarding the alleged one-month delay to see the dentist is even weaker. He does not know whether a nurse or someone else was responsible for the delay and he admits that he "is unaware of the specific reason for this delay." Further, plaintiff does not allege that he was in any pain while he waited for his dental appointment and he does not allege that he has suffered any long term consequences as a result of the delay. I cannot infer simply from the fact that plaintiff had to wait a month to see the dentist that a member of nursing staff violated plaintiff's constitutional rights. McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010) ("[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment."). Accordingly, I am dismissing this claim as well.

### C. State Law Claims

In addition to his constitutional claims, plaintiff alleges that nursing staff members were negligent in delaying his treatment and that both jail officials and the food vendor were negligent in failing to screen his food properly. Under 28 U.S.C. § 1367(c)(3), the general

10

rule is that a federal district court should not retain jurisdiction over state law claims when all the federal claims are dismissed at an early stage in the case. Segal v. Geisha NYC LLC, 517 F.3d 501, 506 (7th Cir. 2008). Because I see no reason to depart from the general rule in this case, I am dismissing plaintiff's state law claims without prejudice. He is free to refile those claims in state court if he wishes.

ORDER

IT IS ORDERED that

1. Plaintiff Valiant Green's federal law claims are DISMISSED WITH PREJUDICE for his failure to state a claim upon which relief may be granted.

2. Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE under 28 U.S.C. § 1367(c)(3).

3. Because I did not dismiss all of plaintiff's claims for one of the reasons listed in 28 U.S.C. § 1915(g), I decline to assess a "strike" under that statute.

4. The clerk of court is directed to enter judgment accordingly.

Entered this 20th day of January, 2016.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge